UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHIC HOME DESIGN, LLC, and THE
LUXURY BEDDING CO.,

                              Plaintiffs,

                    -v-

NEW JOURNEY GROUP LIMITED d/b/a KING
LINEN, COZI HOME, CHEZMOI, and ECITY
DIRECT,

                              Defendants.

15-CV-9468 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

This is a case about textile design copyrights. Plaintiffs Chic Home Design, LLC and The Luxury Bedding Co. (collectively, "Chic Home") claim to own copyrights to three textile patterns named "Livingston Comforter," "Euphoria Yellow," and "Pink Floral." Chic Home accuses Defendant New Journey Group Limited ("New Journey") of infringing those copyrights. New Journey claims that Chic Home's copyright was improperly registered and is therefore invalid. New Journey also asserts a counterclaim for tortious interference with contract.

New Journey has filed a motion for summary judgment. For the reasons that follow, that motion is denied. Chic Home also moves for summary judgment on the tortious interference counterclaim. That motion is granted.

I.     Background

    A.     Factual Background

Our story begins in China. There, a company named Nantong Thongzhou Booming Home Textile Co., Ltd. ("Booming") designed and manufactured bedding sets. One of its

customers was Chic Home, the plaintiff in this case. Chic Home sells bedding online and in its store in Brooklyn.

In 2012, Booming began manufacturing the three disputed textile designs for Chic Home. Chic Home's version of events is as follows: Chic Home obtained computer-aided designs files ("CADs") for the Livingston Comforter and Euphoria Yellow designs from Booming, and obtained the CAD for the Pink Floral design from a third party. (Dkt. No. 42 at 2–3.) Then, Chic Home's president, Morad Nasiri, worked with Booming to change certain colors and trimmings for each of the designs. (*Id.* at 3.) After the designs were finalized, Booming began manufacturing the three bedding sets for Chic Home. Booming made repeated assurances to Chic Home that it was selling these comforter sets exclusively to Chic Home, and not to any other bedding merchants in the United States. (Dkt. No. 43 ¶¶ 5–6.) At his deposition, Nasiri testified that he believed that Chic Home owned the rights to the three designs. (Dkt. No. 43-2 at 13:14–14:24.)

On September 20, 2014, however, Booming entered into a contract with New Journey, transferring to New Journey the rights to twenty-eight designs, including the three designs disputed in this case. (Dkt. No. 38-5.) Since then, New Journey manufactured and sold bedding products using those three designs. (*See* Dkt. No. 42 at 1 (quoting Dkt. No. 43-6).) New Journey stopped manufacturing the designs when this lawsuit was filed. (Dkt. No. 43-6 at 25:17–25:22.)

On October 31, 2014, Chic Home registered a copyright for the Livingston Comforter design. (Dkt. No. 43-4.) In the "Author" field, it lists Jingjing Zhang, a Chinese employee of Booming. (*Id.*) In the "Copyright Claimant" field, it asserts that the copyright was transferred "[b]y written agreement." (*Id.*) On January 7, 2016, Chic Home registered a copyright for the

Euphoria Yellow and Pink Floral designs, providing substantially the same information as for the Livingston Comforter registration. (*Id.*)

B.  **Procedural History**

Chic Home filed this suit on December 3, 2015. (Dkt. No. 1.) The operative complaint is the Second Amended Complaint (the "Complaint"), filed on July 27, 2016. (Dkt. No. 28 ("Compl.").) The Complaint asserts three claims for copyright infringement, one for each of the three designs. New Journey filed an answer on August 2, 2016. (Dkt. No. 29.) In addition to disputing the validity of the three copyrights, New Journey asserted a counterclaim against Chic Home for tortious interference with New Journey's contractual relationship with Booming. (*Id.*)

New Journey filed this motion for summary judgment on February 3, 2017. (Dkt. No. 37.) Chic Home has not filed a formal cross-motion for summary judgment on the tortious interference counterclaim, but its opposition brief nevertheless seeks summary judgment on the issue. (*See* Dkt. No. 42.)

II.  **Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S.

3

317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all evidence "in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (quoting *Lunds, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir. 1989)) (internal quotation marks omitted).

## III. Discussion

There are two issues before the Court on this motion: whether New Journey infringed on Chic Home's copyright and whether Chic Home interfered with the contract between New Journey and Booming. Each is discussed in turn.

### A. Copyright Infringement

"To prove an infringement under the Copyright Act, a plaintiff must show both (1) ownership of the copyright and (2) that the defendant used the copyrighted material without permission." *Electrolux Home Prods., Inc. v. BuyRite Appliances, LLC*, No. 14 Civ. 2461, 2014 WL 5140327, at *2 (E.D.N.Y. Oct. 14, 2014) (citing *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992)). Since New Journey admits that it used the three designs without Chic Home's permission, the only question here is whether Chic Home's copyright is valid.

Both original works and derivative works are copyrightable. Chic Home could own a copyright if it was the original author of the three designs. It could also own a copyright if it authored derivative designs based on pre-existing works. *Nimmer on Copyright* § 3.01 (2017) (citing 17 U.S.C. § 101)). A derivative work is "any work based in whole, or in substantial part,

4

upon a pre-existing (or 'underlying') work," and is copyrightable "if it satisfies the requirements of originality [in the Copyright Act] and is not itself an infringing work." *Id.*

Another important distinction is that between owning a copyright and holding a valid copyright registration. "[A] copyright 'automatically inheres in a work the moment it is created, which is to say when it is fixed . . . for the first time.'" *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 229 (S.D.N.Y. 2012) (quoting *Nimmer on Copyright* § 7.16[A][1]). Thus, a copyright exists in the ether even if it is never registered. However, an author must hold a valid registration with the U.S. Copyright Office in order to sue someone for infringement. The Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made" with the Copyright Office. 17 U.S.C. § 411(a); *see also Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157–58 (2010).

The Copyright Act also provides that a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C § 410(c). "Possession of a certificate of registration provides its holder with a rebuttable presumption of ownership of a valid copyright . . . [and] that all facts stated in the certificate are true." *R.F.M.A.S., Inc. v. So*, 619 F. Supp. 2d 39, 52 (S.D.N.Y. 2009). In other words, a valid registration does two things: It allows the registrant to sue, and it gives the registrant an evidentiary advantage in that litigation.

The presumption of validity can be rebutted by, among other things, "failure to register [a derivative design] as a derivative work." *Ranieri v. Adirondack Dev. Grp., LLC*, 164 F. Supp. 3d 305, 328 (N.D.N.Y. 2016). But rebutting the presumption does not invalidate the copyright or the registration—it only negates the registrant's evidentiary advantage. *See Gibson Tex, Inc. v.*

5

*Sears Roebuck & Co.*, 11 F. Supp. 2d 439, 443 (S.D.N.Y. 1998). Generally speaking, "a misstatement or clerical error in the registration application, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting an infringement action." *Nimmer on Copyright* § 7.20[B][1]; *see also* 17 U.S.C. § 411(b)(1). As long as there was no fraud on the Copyright Office and a corrected application would still be eligible for copyright, the registration remains valid. *Id.*

1. **Chic Home's Copyright**

In this case, Chic Home's lawsuit transformed from claiming an original-design copyright to claiming a derivative-design copyright. The copyright registrations and the Complaint intimate that Chic Home obtained the copyright to the three designs by written transfer from Booming, which implies that Booming authored an original work and sold it to Chic Home. In the "Author" field, the registrations list Jingjing Zhang, a Chinese employee of Booming. (Dkt. No. 43-4.) In the "Copyright Claimant" field, the registrations assert that the copyright was transferred to Chic Home "[b]y written agreement." (*Id.*) None of the registrations are categorized as derivative works. Continuing this theme, the Complaint attaches a purported contract between Booming and Chic Home to prove that Chic Home owns the copyrights. (Compl. ¶ 1 & Ex. 1.)

In keeping with this framing of the case, New Journey's moving brief argues that Booming never transferred ownership of the three designs to Chic Home, and that the copyright registration is therefore invalid. (Dkt. No. 39 at 6–8.) New Journey supports this position with affidavits from Booming employees stating that the rights to the three designs were never transferred to Chic Home. (Dkt. No. 38 Exs. G, H.) New Journey also points out that, while there is a contract between Booming and Chic Home transferring some textile designs, none of the three disputed designs were part of that contract. (Dkt. No. 39 at 7.)

6

In response, Chic Home takes a new tack, reframing the copyright registrations as covering *derivative* works for which *Chic Home* is author. (*See* Dkt. No. 42.) Instead of claiming that it bought the rights to the designs from Booming, Chic Home now claims that, by instructing Booming on how to modify the original CADs, Chic Home created derivative works, the copyrights of which it owned and registered. Therefore, even if Booming owned the original CADs and never transferred them to Chic Home, Chic Home still owns the "enhanced" designs—the modified CADs produced with extensive input by Chic Home. (Dkt. No. 42 at 7.)

In its reply brief, New Journey argues that the registrations are for original works, not derivative works. (Dkt. No. 45 at 1–3.) In support of its position, New Journey points to the fact that the registrations assert that Chic Home obtained the copyrights by written transfer and that a Booming employee was the original author. New Journey also argues that the "enhanced" bedding designs do not qualify as derivative works because they are too similar to the original bedding designs. (Dkt. No. 45 at 3–4.)

2. **Validity of the Registrations**

When viewed as registering derivative works, Chic Home's registrations are clearly inaccurate in three ways. First, the registrations do not classify the designs as derivative works. Second, the registrations list a Booming employee as the author instead of a Chic Home employee. Third, the registrations say that Chic Home obtained the copyright by written transfer, which is inconsistent with Chic Home's claim that it was the owner of the derivative work from its inception. (*See* Dkt. No. 43-4.)[1]

---

[1] This conclusion is based solely on the copyright registrations, and not Chic Home's applications to the Copyright Office. Neither party has submitted copies of Chic Home's copyright applications, and the Court has not reviewed them.

7

Anticipating this problem, Morad Nasiri, Chic Home's president, states in his declaration that when Chic Home registered the three designs, it intended to copyright both the original works (which it believed it owned by virtue of Chic Home's dealings with Booming) and the "enhanced" designs that were produced using Chic Home's input. (Dkt. No. 43 ¶¶ 19–21.) As to the mistakes regarding authorship, transfer, and classification, Nasiri declares that Chic Home did not provide the wrong information intentionally or knowingly. (*Id.* ¶¶ 20–21.)

Summary judgment would be appropriate here if the Court concluded that the inaccuracies in the registrations constitute fraud upon the Copyright Office. If that were the case, the registrations would be invalid and the suit dismissed for failure to comply with the registration prerequisite of 17 U.S.C. § 411(a). However, the Second Circuit has held that "[o]nly the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action.'" *Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir. 1984) (second alteration in original) (quoting *Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 988 (S.D.N.Y. 1980)). "The ultimate question the Court must resolve is whether an error, misstatement or omission in an application for registration invalidates the copyright. Courts considering the issue have generally followed a liberal approach to upholding erroneous registration applications." *Eyal R.D. Corp. v. Jewelex New York, Ltd.*, 576 F. Supp. 2d 626, 640 (S.D.N.Y. 2008).

Viewing the facts in the light most favorable to Chic Home, the Court concludes that there remains a genuine dispute over whether Chic Home really intended to register a derivative work. Likewise, there is a genuine dispute, as discussed below, over whether the "enhanced"

designs were copyrightable as derivative works.[2] Chic Home, by submitting a sworn declaration from Nasiri, adduced evidence that it authored a derivative work, that it intended to register a derivative work, and that the errors were not intentional. That evidence is enough to stave off summary judgment on the issue of the registration's validity.

The decision in *JBJ Fabrics, Inc. v. Brylane, Inc.*, 714 F. Supp. 107 (S.D.N.Y. 1989), is instructive here. In that case, the copyright registrant claimed to own a derivative design and sued an alleged infringer. The defendant moved for summary judgment, arguing that the registration was invalid because the registrant did not categorize it as a derivative work. The court held that "[t]he fact that the design was not registered as a derivative work does not automatically invalidate plaintiff's registration" unless "plaintiff deliberately falsified its registration." *Id.* at 109. The court therefore denied summary judgment because "whether plaintiff had the requisite scienter for a finding of fraud is a factual issue which cannot be resolved on [a] motion for summary judgment." *Id*; *see also Gibson Tex*, 11 F. Supp. 2d at 443 ("There is no evidence that Gibson's failure to inform the Copyright Office of the work's derivative nature was motivated by scienter rising to the level of deliberate misrepresentation.

---

[2] The Court notes that § 411(b)(2) does not apply at this point. That section provides that "[i]n any case in which inaccurate information [in a copyright registration] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2). "[T]here is no case law in the Second Circuit interpreting or applying § 411(b)(2) and the procedure has been rarely invoked in general." *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016). The Court agrees with the *Palmer/Kane* court's textual reading of the statute, in which the court concluded that the referral provision "concerns inaccurate information that 'was included on the application for copyright registration *with knowledge that it was inaccurate*.'" *Id.* (quoting 17 U.S.C. § 411(b)(1)(A) (emphasis added)). As the issue of Chic Home's scienter is in dispute, the Court concludes that referral to the Copyright Office is not appropriate or required at this time. *See also Distribuidora De Discos Karen C. Por A. v. Universal Music Grp., Inc.*, No. 13 Civ. 7706, 2017 WL 1019697 (S.D.N.Y. Mar. 15, 2017).

Therefore, it is inappropriate for the Court to grant summary judgment to defendants on this claim.").

Although Chic Home survives summary judgment, the original-to-derivative switcheroo is not without consequence. Normally, the holder of a valid registration has the benefit of a presumption that the registrant owns a valid copyright in the disputed works. However, given that the registrations at issue in this case, if viewed as registering derivative works, have serious errors, the presumption is rebutted and the evidentiary playing field is leveled. *See Gibson Tex*, 11 F. Supp. 2d at 442 ("Although the Court does not presume that Gibson's copyright is valid, [defendants] still must prove that Gibson's design lacks the requisite originality for copyright protection in order to prevail on their motion for summary judgment. Conversely, Gibson cannot succeed on its summary judgment motion without showing that its design possesses sufficient originality for copyright.").

3.  **Originality**

In its reply brief, New Journey argues that even if the registrations did intend to copyright derivative works, the "enhanced" designs are not copyrightable because they differ only trivially from the original works. (Dkt. No. 45 at 3–4.) Nevertheless, the Court concludes that Chic Home has adduced enough evidence of originality to create a genuine dispute on that issue.

"For a derivative work to have sufficient originality, its variation from the work from which it is derived must be 'substantial' in nature, not 'merely trivial.'" *Gibson Tex*, 11 F. Supp. 2d at 442 (quoting *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir. 1976)). "Although this seems a difficult standard to meet, the requirement of substantial change is not much more than a 'prohibition of mechanical copying.'" *Id.* (quoting *Batlin*, 536 F.2d at 490). "In the context of textile copyrights, the standard applied by the United States Court of Appeals for the

Second Circuit for originality of derivative works is particularly easy to satisfy." *Id.* (collecting cases).

Here, Chic Home has submitted a sworn affidavit by Nasiri detailing the changes made to the original CAD files. These include changing colors, adjusting the embroidery, and adding ruffles and buttons. (Dkt. No. 43 ¶ 16.) "Typically, when the originality of a copyrighted work is at issue, it becomes a question of fact for the jury to resolve." *Vargas v. Pfizer, Inc.*, 418 F. Supp. 2d 369, 372 (S.D.N.Y. 2005) (quoting *Tin Pan Apple, Inc. v. Miller Brewing Co., Inc.*, No. 88 Civ. 4085, 1994 WL 62360, at *4 (S.D.N.Y. Feb. 24, 1994)) (quotation marks and alterations omitted). The Court therefore concludes that there is a genuine dispute on the issue of originality.

While Chic Home lives to litigate another day, its derivative copyright, if found valid, might be a slim one. A derivative copyright "covers only those elements contained therein that are original with the copyright claimant." *Nimmer on Copyright* § 3.04[A]. "Where the quantum of originality is slight and the resulting copyright is 'thin,' infringement will be established only by very close copying because the majority of the work is unprotectable." *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996). For now, however, summary judgment is not warranted.

### B. Tortious Interference

New Journey also moves for summary judgment on its counterclaim for tortious interference with contract. (Dkt. No. 39 at 9–10.) New Journey claims that by filing and maintaining this lawsuit, Chic Home is interfering with New Journey's contract with Booming. New Journey alleges that the lawsuit "forced" it to stop manufacturing the three designs, which "made it impossible for [New Journey] to uphold its end of the contract with [Booming] for the manufacture of products." (Dkt. No. 39 at 10.)

11

Though Chic Home has not filed a formal motion for summary judgment on the tortious interference crossclaim, its opposition brief requests summary judgment on the issue. New Journey, in its reply brief, responds to Chic Home's arguments on the merits (in part, and briefly) but does not raise any procedural objection to the request for summary judgment. The Court therefore construes Chic Home's opposition brief as a cross-motion for summary judgment. *See e.g., Geller v. Prudential Ins. Co. of Am.*, 237 F. Supp. 2d 210, 212 n.2 (E.D.N.Y. 2002).

"Under New York law, the elements of a claim for tortious interference with contractual relations are: i) the existence of a valid contract between the plaintiff and a third party; ii) defendant's knowledge of the contract; iii) defendant's intentional inducement of the third party to breach the contract or otherwise render performance impossible; and iv) damages to the plaintiff." *Lennon v. Seaman*, 63 F. Supp. 2d 428, 433 (S.D.N.Y. 1999) (citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993)).

The weakest point of New Journey's counterclaim is the third element. New Journey does not contend that any contract was actually breached. Instead, it argues that actual breach is not required, and that it is enough that the lawsuit made it "impossible" for the New Journey-Booming contract to continue. (Dkt. No. 39 at 10.) For starters, the Second Circuit has doubted whether New York law allows tortious-interference-with-contractual-relations claims where there has been no actual breach. *See D'Andrea v. Rafla-Demetrious*, 146 F.3d 63, 65 (2d Cir. 1998). But even if such claims were allowed, "a plaintiff must at least allege that the defendant's interference made the contract impossible to perform, or that the defendant induced the third party to render performance impossible." *Nat'l Football League Properties, Inc. v. Dallas Cowboys Football Club, Ltd.*, 922 F. Supp. 849, 856 (S.D.N.Y. 1996). A voluntary cessation of

production for fear of losing a lawsuit is neither. If it were, virtually any lawsuit could be grounds for a tortious interference claim.

Accordingly, Chic Home is entitled to summary judgment on the tortious interference counterclaim.

## IV. Conclusion

For the foregoing reasons, New Journey's motion for summary judgment is DENIED. Chic Home's cross-motion for summary judgment is GRANTED, and New Journey's counterclaim for tortious interference is dismissed.

The Clerk of Court is directed to close the motion at Docket Number 37.

SO ORDERED.

Dated: August 30, 2017
    New York, New York

_____
J. PAUL OETKEN
United States District Judge